Slip Op. 10-3

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **UNITED STATES STEEL CORPORATION**, <br><br> Plaintiff, <br><br> and <br><br> **NUCOR CORPORATION**, <br><br> Plaintiff-Intervenor, <br><br> v. <br><br> **UNITED STATES**, <br><br> Defendant, <br><br> and <br><br> **HYUNDAI HYSCO**, <br><br> Defendant-Intervenor. | **Before: Timothy C. Stanceu, Judge** <br><br> **Court No. 08-00131** |

## OPINION

[Denying plaintiff's motion for judgment upon the agency record on its claim contesting the final results of an administrative review of an antidumping duty order]

Dated: January 11, 2010

*Skadden, Arps, Slate, Meagher & Flom LLP* (*Jeffrey D. Gerrish*, *John J. Mangan*, *Robert E. Lighthizer*, *Ellen J. Schneider*, *Luke A. Meisner*, and *Soo-Mi Rhee*) for plaintiff.

*Wiley Rein LLP* (*Timothy C. Brightbill*) for plaintiff-intervenor.

*Tony West*, Assistant Attorney General, *Jeanne E. Davidson*, Director, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (*Claudia Burke*); *Jonathan Zielinski*, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of counsel, for defendant.

*Akin Gump Strauss Hauer & Feld LLP* (*J. David Park*, *Bryce V. Bittner*, *Jarrod M. Goldfeder*, *Lisa W. Ross*, and *Natalya D. Dobrowolsky*) for defendant-intervenor.

Stanceu, Judge: Plaintiff United States Steel Corporation ("U.S. Steel") contests the final determination ("Final Results") issued in 2008 by the International Trade Administration, United States Department of Commerce ("Commerce" or the "Department"), in a periodic administrative review of an antidumping duty order on imports of certain corrosion-resistant carbon steel flat products ("subject merchandise") from the Republic of Korea ("Korea"). *See Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Final Results of the Thirteenth Admin. Review*, 73 Fed. Reg. 14,220 (Mar. 17, 2008) ("*Final Results*"). Plaintiff and plaintiff-intervenor Nucor Corporation ("Nucor") are U.S. producers of corrosion-resistant carbon steel flat products. Plaintiff claims that Commerce, in determining a dumping margin for defendant-intervenor Hyundai HYSCO ("HYSCO"), a Korean manufacturer and exporter of subject merchandise, unlawfully failed to make a downward adjustment in the calculation of the constructed export price ("CEP") of U.S. sales of HYSCO's subject merchandise to account for certain indirect selling expenses that HYSCO incurred in Korea. *Id.* at 14,220; Compl. ¶ 12. Because substantial record evidence supports the Department's determination that the indirect selling expenses were not incurred on behalf of the sales of HYSCO's subject merchandise to unaffiliated purchasers in the United States, the court rejects plaintiff's claim.

## I. BACKGROUND

In September 2006, Commerce initiated the thirteenth administrative review of an antidumping duty order on certain corrosion-resistant carbon steel flat products from Korea for

the period of August 1, 2005 through July 31, 2006 (the "period of review"). *Initiation of Antidumping & Countervailing Duty Admin. Reviews*, 71 Fed. Reg. 57,465, 57,465 (Sept. 29, 2006). In its response to Section A of Commerce's questionnaire ("Section A Response"), HYSCO reported that it sold subject merchandise to unaffiliated distributors in the United States through a wholly-owned U.S. subsidiary, Hyundai Hysco USA, Inc. ("HHU"), that HHU is located in Houston, Texas and has a branch sales office in Los Angeles, California, and that both HYSCO and HHU were involved in the sales negotiation process with the unaffiliated distributors. *Letter from Akin Gump to Sec'y of Commerce* 12-13, 20-21 (Nov. 14, 2006) (Admin. R. Doc. No. 44) (at pages 6-7 and 14-15 of the Section A Response) ("*Section A Resp.*"). The Section A Response added that "HHU directly communicates with the customers throughout the sales process, receives the U.S. customers' orders, places the corresponding orders with HYSCO, invoices the customers, arranges U.S. customs clearance, brokerage, and wharfage, and takes title to the merchandise." *Id.* at 12-13 (at pages 6-7 of the Section A Response).

HYSCO provided in its Section A Response, in response to Commerce's instructions, a "Level of Trade Chart" listing fifteen activities (identified as "Selling Functions Services by Channel of Distribution") that HYSCO performed in its home market, along with brief definitions for each of these activities. *Id.* at 20-22, Ex. 6 (at pages 14-16 and Ex. 6 of the Section A Response). In a supplemental questionnaire, Commerce asked a series of questions concerning HYSCO's activities in maintaining HHU, the U.S. sales affiliate, and how the costs associated with those activities were reported. *Letter from Program Manager, Dep't of Commerce, to Akin Gump* 3-4 (Dec. 21, 2006) (Admin. R. Doc. No. 70) ("*Supplemental*

*Questionnaire*").  In its response to the supplemental questionnaire ("Supplemental Response"), HYSCO explained that although it performed general activities in Korea necessary to support sales to the United States, it did not perform activities devoted solely to maintaining or supporting its U.S. sales subsidiaries.  *Letter from Akin Gump to Sec'y of Commerce* 11-13 (Jan. 30, 2007) (Admin. R. Doc. No. 95) (at pages 5-7 of the Supplemental Response) ("*Supplemental Resp.*").  The response also informed Commerce that HYSCO records the expenses associated with these general activities as selling, general and administrative ("SG&A") expenses and included a second chart, which it labeled as "Expense Field associated with Selling Activity" (the "Selling Functions Chart"), that identified selling functions as indirect selling expenses incurred in the country of manufacture, Korea.  *Supplemental Resp.* Ex. S-9. Commerce reviewed and verified HYSCO's questionnaire responses and, with respect to the reporting of the indirect selling expenses, found no discrepancies.  *Mem. from Int'l Trade Compliance Analyst, Office 3, to The File* 6-7 (Aug. 31, 2007) (Admin. R. Doc. No. 231) ("*Verification Report*").

Commerce published preliminary results of the thirteenth review ("Preliminary Results") in September 2007, in which it preliminarily assigned HYSCO a weighted-average dumping margin of 0.51%.  *Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea: Notice of Prelim. Results & Partial Rescission of Antidumping Duty Admin. Review*, 72 Fed. Reg. 51,584, 51,588 (Sept. 10, 2007) ("*Prelim. Results*").  Following publication of the Preliminary Results, plaintiff and plaintiff-intervenor argued in case briefs that the antidumping statute required Commerce to adjust CEP for certain of HYSCO's indirect selling expenses. *Issues & Decisions for the Final Results of the Thirteenth Admin. Review of the Antidumping*

*Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea (2005-2006) (Final Results)*, at 27-28 (Mar. 10, 2008) ("*Decision Mem.*"). Rejecting these arguments, Commerce explained that because HYSCO's questionnaire responses showed that there were no indirect selling expenses incurred in Korea on behalf of U.S. sales to unaffiliated parties, it would be inappropriate to adjust HYSCO's indirect sales expense ratio for these expenses. *Id.* Commerce made no such adjustment in the Final Results, in which Commerce assigned to HYSCO a weighted-average dumping margin of 0.53%. *Final Results*, 73 Fed. Reg. at 14,221.

Plaintiff brought this action on April 16, 2008. *See* Summons. Before the court is plaintiff's motion for judgment upon the agency record. Pl.'s Mot. for J. on the Agency R. Under Rule 56.2; Mem. in Supp. of Pl.'s Mot. for J. on the Agency R. Under Rule 56.2 ("Pl.'s Mem.").

## II. DISCUSSION

The court exercises jurisdiction under 28 U.S.C. § 1581(c), under which the court reviews actions brought under 19 U.S.C. § 1516a, including actions contesting the final results of an administrative review issued under 19 U.S.C. § 1675(a). 19 U.S.C. §§ 1516a, 1675(a) (2006); 28 U.S.C. § 1581(c) (2006). In reviewing the Final Results, the court is required to hold unlawful any determination, finding, or conclusion found to be unsupported by substantial evidence on the record or otherwise not in accordance with law. *See* 19 U.S.C. § 1516a(b)(1)(B)(i). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).

In the thirteenth review, Commerce resorted to CEP for calculating HYSCO's

antidumping margin because Commerce found that HYSCO sold subject merchandise to its U.S.

subsidiaries and that the subsidiaries resold the merchandise to unaffiliated customers. *See*

*Decision Mem.* 27-28; 19 U.S.C. § 1677a(b) (2006). With respect to CEP, the statute requires in

19 U.S.C. § 1677a(d) that Commerce reduce the starting price used to establish constructed

export price, *i.e.*, the price at which the merchandise is resold by an affiliated party to an

unaffiliated purchaser, by the amount of certain expenses "generally incurred by or for the

account of the producer or exporter, or the affiliated seller in the United States, in selling the

subject merchandise." 19 U.S.C. § 1677a(d)(1) (2006).[1] The Department's regulations provide

that the Secretary of Commerce, in establishing CEP, "will make adjustments for expenses

associated with commercial activities in the United States that *relate to* the sale to an unaffiliated

purchaser, no matter where or when paid." 19 C.F.R. § 351.402(b) (2009) (emphasis added).

The regulations further state that "[t]he Secretary will not make an adjustment for any expense

---

[1] In pertinent part, the statute provides:
For purposes of this section, the price used to establish constructed export price
shall also be reduced by–
    (1) the amount of any of the following expenses generally incurred by or
for the account of the producer or exporter, or the affiliated seller in the
United States, in selling the subject merchandise (or subject merchandise to
which value has been added)–
        (A) commissions for selling the subject merchandise in the United
States;
        (B) expenses that result from, and bear a direct relationship to, the sale,
such as credit expenses, guarantees and warranties;
        (C) any selling expenses that the seller pays on behalf of the purchaser;
and
        (D) any selling expenses not deducted under subparagraph (A), (B), or
(C); . . . .
19 U.S.C. § 1677a(d) (2006).

that is related solely to the sale to an affiliated importer in the United States, although the Secretary may make an adjustment to normal value for such expenses under section 773(a)(6)(C)(iii) of the Act [*i.e.*, 19 U.S.C. § 1677b(a)(6)(C)(iii)]." *Id.* The regulation codifies the principle that the purpose of a CEP adjustment for selling expenses is to arrive at a constructed export price that approximates what export price would have been. *See Micron Tech., Inc. v. United States*, 243 F.3d 1301, 1313 (Fed. Cir. 2001) (citing *The Uruguay Round Agreements Act, Statement of Administrative Action*, H.R. Doc. No. 103-316 (Vol. 1), at 823 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4163, and *Antidumping Duties; Countervailing Duties*, 62 Fed. Reg. 27,296, 27,371 (May 19, 1997) (the "*Preamble*"), and stating that "[t]o calculate CEP at a price corresponding to EP [*i.e.*, export price], Commerce logically must deduct only those expenses incurred solely in CEP transactions, i.e., only those expenses associated with the sale of subject merchandise to an unaffiliated purchaser in the United States by a party affiliated with the foreign producer or exporter.").

In claiming that Commerce erred in declining to make a downward adjustment under 19 U.S.C. § 1677a(d) for certain of the indirect selling expenses that HYSCO incurred, plaintiff does not challenge the validity of 19 C.F.R. § 351.402(b). Instead, plaintiff's claim poses the question of whether substantial record evidence supports Commerce's finding that the particular indirect selling expenses that plaintiff identifies were not incurred "on behalf of" the sales that HHU made to unaffiliated purchasers in the United States. *Decision Mem.* 28. In view of the Department's regulation, the court considers Commerce to have reached an implicit determination that these expenses did not "relate to" the sales to the unaffiliated distributors, within the meaning of 19 C.F.R. § 351.402(b). *See* 19 C.F.R. § 351.402(b); *Decision*

*Mem.* 27-28. In reviewing the issue presented by this case, the court looks to the evidence on the record considered as a whole. *See* 19 U.S.C. § 1516a(b)(1)(B)(i); *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (stating that the court may affirm a determination as supported by substantial record evidence even if some evidence detracts from the Department's conclusion).

Plaintiff makes two arguments in its memorandum in support of its motion for judgment upon the agency record. First, plaintiff argues that the record lacks substantial evidence to support Commerce's finding that no selling expenses were incurred in Korea on behalf of U.S. sales to unaffiliated parties. Pl.'s Mem. 9-13. Second, plaintiff argues that Commerce's finding must be overturned because the facts present in the thirteenth review are not distinguishable from those in the two previous reviews, in which Commerce made downward adjustments in determining CEP based on findings that HYSCO performed selling functions related to U.S. sales to unaffiliated parties. *Id.* at 13-16.

The record evidence at the center of this dispute includes the Section A Response, which incorporated the Level of Trade Chart and definitions for the various selling activities that the chart attributed to HYSCO. *Section A Resp.* Ex. 6. It also includes HYSCO's Supplemental Response, which included the Selling Functions Chart. *Supplemental Resp.* Ex. S-9. The record contains, further, the report of the verification that Commerce conducted on HYSCO's business records, in which Commerce reported that it found no discrepancies in the submitted information on HYSCO's indirect selling expenses. *Verification Report* 6-7.

Plaintiff argues that HYSCO's questionnaire responses provide "clear and undisputed record evidence" that HYSCO incurred some indirect selling expenses for which a downward

adjustment in CEP must be made. Pl.'s Mem. 9. In support of this argument, plaintiff points to seven of the fifteen selling activities that HYSCO identified in those responses and, specifically, in charts included therein (*e.g.*, the Level of Trade Chart and the Selling Functions Chart). *Id.* at 10-11. Plaintiff argues that the questionnaire responses establish, first, that HYSCO incurred indirect selling expenses in performing these selling activities and, second, that HYSCO performed seven of these activities "in support of its sales to unaffiliated U.S. customers." *Id.* at 10. The seven selling activities that plaintiff relies on for its claim are "Strategic/Economic Planning," "Personnel Training/Exchange," "Engineering Services," "Advertising," "Procurement/Sourcing Services," "Market Research," and "Technical Assistance."[2] *Id.* at 11; *see Section A Resp.* Ex. 6.

The Section A Response, which contains a listing of the seven selling activities in question in the Level of Trade Chart and definitions for these activities, does not resolve the issue of whether these seven activities related to HHU's resale transactions. Without further explanation or clarification, each of the seven activities could be construed to refer to business activities occurring outside the United States or to refer to business activities in the United States other than those resale transactions. Commerce was induced by the Section A Response to issue a supplemental questionnaire soliciting information to resolve whether indirect selling expenses pertaining to the listed selling activities should result in a deduction to CEP. *Supplemental Questionnaire* 3-4. This inquiry resulted in HYSCO's statement that "HYSCO does not perform

---

[2] The other eight reported selling activities were "Sales Forecasting," "Sales Promotion," "Packing," "Order Input/Processing," "Direct Sales Personnel," "Sales/Marketing Support," "Provide Warranties Service," and "Freight & Delivery Arrangement." *Letter from Akin Gump to Sec'y of Commerce* Ex. 6 (Nov. 14, 2006) (Admin. R. Doc. No. 44) ("*Section A Resp.*").

activities in Korea devoted solely to maintaining or supporting the U.S. sales subsidiaries."
*Supplemental Resp.* 11 (at page 5 of the Supplemental Response).  The Supplemental Response

further stated that "HYSCO does perform general activities necessary to support sales to the

United States, for example, scheduling production and making logistics arrangements for

shipments of the finished products."  *Id.*  This statement does not compel a conclusion that the

activities related to the resale transactions in the United States, as opposed to the related party

sales transactions.  The statement in the Supplemental Response that "HYSCO also performs

general activities that indirectly support its overseas subsidiaries," *id.*, might be construed to give

rise to an inference that the indirect support provided to one of those subsidiaries, HHU, related

to the resale transactions because, the record shows, HHU was a sales subsidiary.  Nevertheless,

Commerce was not required to draw such an inference, and other record evidence would call

such an inference into question.  The Section A Response included the statement that "HHU

directly communicates with the customers throughout the sales process, receives the U.S.

customers' orders, places the corresponding orders with HYSCO, invoices the customers,

arranges U.S. customs clearance, brokerage, and wharfage, and takes title to the merchandise."
*Section A Resp.* 12-13 (at pages 6-7 of the Section A Response); *see Supplemental Resp.* 12-13

(at pages 6-7 of the Supplemental Response).

       The record shows, additionally, that Commerce based its acceptance of HYSCO's

explanation on its having verified HYSCO's questionnaire responses.  *See Decision Mem.* 28.

After verifying HYSCO's questionnaire responses, Commerce stated that it would not make a

CEP adjustment for any of HYSCO's indirect selling expenses, explaining that "HYSCO's

questionnaire response shows that there were no selling expenses incurred in Korea on behalf of

U.S. sales to unaffiliated parties, as reported in their LOT [*i.e.*, the Level of Trade Chart]," that

Commerce found no discrepancies upon verification, and that Commerce concluded that it would

be inappropriate to make an adjustment to HYSCO's indirect selling expense ratio in the Final

Results. *Id.*

In summary, plaintiff's arguments do not persuade the court that the questionnaire

responses are "clear and undisputed record evidence" that the seven selling activities resulted in

indirect selling expenses that HYSCO incurred in Korea and that related to HHU's sales to

unaffiliated customers in the United States. *See* Pl.'s Mem. 9-10. Although the record evidence

supports a finding that HYSCO incurred indirect selling expenses in Korea in performing these

seven selling activities, when considered as a whole the record evidence does not preclude

Commerce from determining that the indirect selling expenses resulting from these seven

activities did not relate to HHU's sales to the unaffiliated U.S. distributors. Moreover, in this

judicial proceeding, the "'the possibility of drawing two inconsistent conclusions from the

evidence does not prevent an administrative agency's finding from being supported by

substantial evidence.'" *AK Steel Corp. v. United States*, 192 F.3d 1367, 1371 (Fed. Cir. 1999)

(quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

Plaintiff's second argument, that Commerce must deduct the subject indirect selling

expenses in the thirteenth review because it deducted expenses related to HYSCO's selling

activities in the eleventh and twelfth reviews, Pl.'s Mem. 6-7, also falls short on the

administrative record before the court. Plaintiff argues specifically that the selling activities

performed by HYSCO in the thirteenth review were "*identical*" to those HYSCO performed in

the twelfth review. *Id.* at 16. The records of the eleventh and twelfth administrative reviews are

not before the court, so the court is unable to confirm the premise of plaintiff's argument.

However, even were the court to accept this premise, it would not follow that the court must set

aside Commerce's decision in the thirteenth review not to make an adjustment in CEP to account

for the indirect selling expenses in question. Under the substantial evidence component of the

applicable standard of review, the court must review the findings and determinations that

Commerce made in reaching the final results of the thirteenth review, and it must do so according

to the evidence on the administrative record before it. 19 U.S.C. § 1516a(b)(1)(B)(i).

Commerce's factual findings in the eleventh and twelfth administrative reviews, whether correct

or not, are not before the court for review. Additionally, some evidence of record in the

thirteenth review does not support the premise of plaintiff's argument. The record contains

HYSCO's statement that "[w]hile HYSCO employees have visited HHU for sales meetings and

to assist in providing general technical advice to customers, they did not conduct any such travel

or meetings during the POR." *Supplemental Resp.* 12 (at page 6 of the Supplemental Response).

This statement is evidence that the activities conducted by HYSCO in the thirteenth review may

have differed from those in prior reviews in a way that is relevant to the issues presented in this

case.[3]

---

[3] Commerce disagreed with U.S. Steel's argument, made during the thirteenth review, "that the facts in the instant review are identical to those in the previous reviews." *Issues & Decisions for the Final Results of the Thirteenth Admin. Review of the Antidumping Duty Order on Certain Corrosion-Resistant Carbon Steel Flat Products from the Republic of Korea (2005-2006) (Final Results)*, at 27 (Mar. 10, 2008) ("*Decision Mem.*"). Commerce stated in the issues and decisions memorandum that it adjusted CEP for a portion of HYSCO's indirect selling expenses in the eleventh and twelfth reviews because it found in those reviews that HYSCO performed most of the selling functions involved in the U.S. resales. *Id.* at 27-28. Drawing a distinction with the previous two reviews, Commerce stated that "[i]n this review, HYSCO's questionnaire response shows that there were no selling expenses incurred in Korea on behalf of

(continued...)

Finally, plaintiff argues in its reply brief that a remand is required because defendant, in its brief opposing plaintiff's motion, misstates the legal standard applicable in this case. Plaintiff refers to defendant's argument that Commerce does not deduct indirect selling expenses incurred by the foreign producer in the foreign country that are general in nature rather than related directly to sales to the unaffiliated U.S. customer. Reply Br. in Supp. of Pl.'s Mot. for J. on the Agency R. under Rule 56.2, at 11-12 ("Pl.'s Reply") (citing Def.'s Mem. in Opp'n to Pl.'s Mot. for J. upon the Agency R. 7 ("Def.'s Opp'n")). As plaintiff points out, defendant argued that Commerce does not adjust for indirect selling expenses that are general in nature and do not relate directly to the sale to the unaffiliated customer in the United States. Def.'s Opp'n 7. However, defendant's argument is a *post hoc* rationalization for the Department's decision, as plaintiff itself recognizes. *See* Pl.'s Reply 10. The court finds nothing in the Final Results or the incorporated decision memorandum stating that Commerce made its decision based on a finding that HYSCO's selling expenses were "general" in nature or a finding that these expenses did not relate "directly" to the sales to the unaffiliated distributors. *See Decision Mem.* 27-28. It was based instead on a finding that HYSCO incurred no selling expenses in Korea "on behalf of U.S. sales to unaffiliated parties." *Id.* at 28. There is no meaningful distinction between this express finding and a finding that the expenses at issue did not "relate to" the sale to the unaffiliated purchasers, within the meaning of the Department's regulation. 19 C.F.R. § 351.402(b).

---

[3](...continued)
U.S. sales to unaffiliated parties, as reported in their [Level of Trade] chart." *Id.* at 28.

For the reasons set forth above, the court must affirm the Department's decision not to adjust the CEP of HYSCO's subject merchandise to account for the seven categories of indirect selling expenses identified by plaintiff.

### III. CONCLUSION

The court will affirm the Final Results because plaintiff has failed to show that the Department acted contrary to law in calculating HYSCO's CEP without deducting the indirect selling expenses identified by plaintiff. Judgment will be entered accordingly.

/s/ Timothy C. Stanceu
Timothy C. Stanceu
Judge

Dated: January 11, 2010
New York, New York